# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

|  |  |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation); ABBVIE PRODUCTS LLC (a Georgia limited liability company); PHARMACYCLICS LLC (a Delaware limited liability company); and ALLERGAN SALES, LLC (a Delaware limited liability company), | |
| *Plaintiffs*, | Case No. 3:25-cv-00519 |
| v. | Judge Aleta A. Trauger |
| JONATHAN SKRMETTI, in his official capacity as ATTORNEY GENERAL OF THE STATE OF TENNESSEE, | |
| *Defendant*. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................................... **1**

**BACKGROUND** ........................................................................................................................ **1**

**LEGAL STANDARD** .............................................................................................................. **6**

**ARGUMENT** ............................................................................................................................ **6**

I.  AbbVie Has Stated A Cause of Action That This Court Can Remedy. ................................. 6

II.  AbbVie Has Adequately Stated A Preemption Claim As To Subsection (A). ..................... 8

III.  AbbVie Has Adequately Stated A Due Process Claim............................................................ 12

IV.  AbbVie Has Adequately Stated A First Amendment Claim. ............................................... 13

V.  If the Court Reaches Them, AbbVie Has Adequately Stated Claims Under the Takings
Clause, Supremacy Clause, and Dormant Commerce Clause. ............................................ 14

**CONCLUSION** ...................................................................................................................... **20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States,*
    567 U.S. 387 (2012)................................................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................6, 19

*Astra USA, Inc. v. Santa Clara County, Cal.,*
    563 U.S. 110 (2011)............................................................................................2, 3, 11

*AstraZeneca Pharms. LP v. Becerra,*
    543 F. Supp. 3d 47 (D. Del. 2021)......................................................................2, 17

*Bacchus Imports, Ltd. v. Dias,*
    468 U.S. 263 (1984)................................................................................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................6

*Borough of Duryea, Pa. v. Guarnieri,*
    564 U.S. 379, 387 (2011).......................................................................................14

*Buckman Co. v. Plaintiffs' Legal Comm.,*
    531 U.S. 341 (2001)................................................................................................19

*Cedar Point Nursery v. Hassid,*
    594 U.S. 139 (2021)................................................................................................15

*Christian Healthcare Ctrs., Inc. v. Nessel,*
    117 F.4th 826 (6th Cir. 2024).................................................................................6, 7

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000).................................................................................................8

*Freeman Indus., LLC v. Eastman Chem. Co.,*
    172 S.W.3d 512 (Tenn. 2005)................................................................................20

*Gable v. Lewis,*
    201 F.3d 769 (6th Cir. 2000) .................................................................................14

*Healy v. Beer Inst.,*
    491 U.S. 324 (1989)................................................................................................20

Case 3:25-cv-00519    Document 52    Filed 08/07/25    Page 3 of 27 PageID #: 2063

*Holzemer v. City of Memphis*,
    621 F.3d 512 (6th Cir. 2010) ........................................................................14

*Horne v. Dep't of Agric.*,
    576 U.S. 350 (2015).......................................................................................15

*Johnson v. United States*,
    576 U.S. 591 (2015).......................................................................................12

*Leonardson v. City of E. Lansing*,
    896 F.2d 190 (6th Cir. 1990) ..................................................................12, 13

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023).......................................................................................19

*Novartis Pharms. Corp. v. Bailey*,
    2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ..........................................19, 20

*Novartis Pharms. Corp. v. Johnson*,
    102 F.4th 452 (D.C. Cir. 2024)............................................................ *passim*

*PhRMA v. Morrisey*,
    760 F. Supp. 3d 439 (S.D. W.Va. 2024) .....................................................11

*Sanofi Aventis U.S. LLC v. HHS*,
    58 F.4th 696, 703-04 (3d Cir. 2023) .............................................................5

*Tennessee Educ. Ass'n v. Reynolds*,
    732 F. Supp. 3d 783 (M.D. Tenn. 2024).....................................................13

*Thomas v. Schroer*,
    2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017)..........................................8

*Wilkins v. Daniels*,
    913 F. Supp. 2d 517 (S.D. Ohio 2012) ......................................................16

**Constitutional Provisons**

U.S. Const. art. I, § 8, cl. 3...............................................................................20

**Statutes**

42 U.S.C. § 256b(a) ............................................................................... *passim*

42 U.S.C. § 256b(d) .............................................................................................9

42 U.S.C. § 1320f .................................................................................................9

**Page(s)**

42 U.S.C. § 1320f-2 ....................................................................................9, 10

42 U.S.C. § 1396r-8 .........................................................................................2

Tenn. Code Ann. § 47-18-104 ..........................................................................6

Tenn. Code Ann. § 47-18-109 ..........................................................................6

Tenn. Code Ann. § 47-18-136 .........................................................................18

Tenn. Code Ann. § 47-18-136(a) ............................................................. *passim*

Tenn. Code Ann. § 47-18-136(c) ............................................................. *passim*

Tenn. Code Ann. § 47-18-136(g) .....................................................................11

**Regulations**

61 Fed. Reg. 43,549 (Aug. 23, 1996) ...........................................................3, 4

61 Fed. Reg. 65,406 (Dec. 12, 1996) ..........................................................9, 14

75 Fed. Reg. 10,272 (Mar. 5, 2010) .................................................................3

89 Fed. Reg. 28,643 (Apr. 19, 2024) .............................................................2, 9

90 Fed. Reg. 36,163 (Aug. 1, 2025) ............................................................9, 10

Case 3:25-cv-00519    Document 52    Filed 08/07/25    Page 5 of 27 PageID #: 2065

## INTRODUCTION

S.B. 1414 suffers from cascading constitutional infirmities. It compels AbbVie to transfer its products at discounted prices to for-profit retail pharmacies—banning anything that amounts to interference with a pharmacy's attempt to access those discounts. And it can only do so by prejudicing out-of-state commerce in favor of in-state interests. The new law then destroys AbbVie's right to attach reasonable terms and conditions to its offer of discounted drugs to covered entities (a destruction that takes with it AbbVie's right to petition the federal government to remedy program violations). Along the way, S.B. 1414 delegates unbounded authority to the Attorney General to determine on a whim that new practices of the 340B Program are unlawful.

What is worse, these constitutional transgressions will not even benefit the public. AbbVie's well-pled factual allegations—like the evidence sure to follow in discovery—place beyond dispute that S.B. 1414 protects only the arbitrage profits of private commercial pharmacies and their hospital partners. The law does *nothing* for Tennesseans or patients. It guarantees only that some of the country's largest and most profitable pharmacy and hospital chains can continue to leverage a public-benefit program to drive revenues.

The Attorney General's motion should be denied.

## BACKGROUND

***The 340B Drug Pricing Program.*** The 340B Program works as follows: In exchange for participation in federal Medicaid and Medicare programs, the statute requires manufacturers to "offer" their products to each "covered entity . . . for purchase at or below the applicable ceiling price." 42 U.S.C. § 256b(a)(1). The "ceiling price" is set by a statutory formula and results in significant discounts, ranging from 23.1 percent to more than 99.9 percent of the average market price for a given drug. Dkt. 1 ¶ 39. From a practical standpoint, this means that manufacturers often sell their medicine for as little as one penny per unit. *Id.*

"Covered entities" include, among other healthcare providers, federally qualified health centers and rural hospitals. 42 U.S.C. § 1396r-8(a)(5)(B); *Id.* § 256b(a)(4). The statutorily defined list of covered entities does not include retail pharmacies or any for-profit entity. *Id.* § 256b(a)(4). Nor does the 340B statute include any provision authorizing covered entities to purchase manufacturers' drugs and dispense them through commercial pharmacies. *See AstraZeneca Pharms. LP v. Becerra*, 543 F. Supp. 3d 47, 60 (D. Del. 2021).

Manufacturers make concrete their promise to offer the appropriate discounts to covered entities by signing a "Pharmaceutical Pricing Agreement" ("PPA") with the United States Department of Health & Human Services ("HHS"). Dkt. 1 ¶ 40; 42 U.S.C. § 256b(a)(1). The statute prohibits covered entities from "resell[ing] or otherwise transfer[ing]" drugs they purchased at a discount to anyone who is not a patient of the entity—often referred to as "diversion." *Id.* § 256b(a)(5)(B). And covered entities may not request a Medicaid rebate on a unit of drug that they purchased at a 340B discount—a forbidden "duplicate discount." *Id.* § 256b(a)(5)(A)(i).

Congress vested HHS and its subagency, the Health Resources and Service Administration ("HRSA"), with exclusive authority to enforce and administer the 340B Program through audits and federal Administrative Dispute Resolution ("ADR"). Dkt. 1 ¶¶ 48–49; *see also Astra USA, Inc. v. Santa Clara County, Cal.*, 563 U.S. 110, 120–21 (2011). HRSA recently issued a final rule setting forth additional details of the congressionally prescribed 340B ADR process. *See* 89 Fed. Reg. 28,643 (Apr. 19, 2024). "The final rule established a comprehensive scheme to resolve disputes between manufacturers and covered entities arising under the 340B statute." Dkt. 1 ¶ 49. Under the rule, a "'340B ADR Panel' within HRSA is tasked with resolving not only disputes about drug prices but also 'claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price'—the exact issue S.B. 1414

2

seeks to address." *Id.* By vesting enforcement authority solely in HHS, Congress impliedly withheld from covered entities a private right of action to enforce the 340B Program's requirements against manufacturers. *Astra*, 563 U.S. at 120–21. Any such auxiliary enforcement mechanisms would "undermine the agency's efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." *Id.*

*Contract Pharmacies.* In 1996, HRSA issued non-binding guidance opining that covered entities lacking an in-house dispensing pharmacy should be permitted to contract with a ***single*** pharmacy to dispense 340B-priced drugs to their patients. 61 Fed. Reg. 43,549, 43,550–55 (Aug. 23, 1996). To avoid unlawful diversion, HRSA assumed that the covered entity would maintain title to those drugs and that the pharmacy would remain an agent of the covered entity. *Id.*

The status quo changed in 2010. HRSA purported to permit ***all*** covered entities—even those with their own in-house pharmacy—to contract with an ***unlimited*** number of contract pharmacies, rather than just one local pharmacy. 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010). In the decade following the 2010 guidance, covered entities' use of contract pharmacies surged by more than ***12,000 percent***. Dkt. 1 ¶ 56. This explosion in the use of contract pharmacies has been driven by the prospect of sharing in the outsized profit margins on manufacturer-subsidized 340B-priced drugs. *Id.* Commercial pharmacies—often multi-billion-dollar companies like CVS and Walgreens—generate significant profits by sharing in the "spread" from selling 340B-priced drugs at full or higher prices to pharmacy customers and/or seeking full commercial reimbursement from the patients' insurance plans. *Id.* ¶¶ 59, 70.

Today, most contract pharmacies, including in Tennessee, operate under what is known as the "replenishment model." *Id.* ¶ 62. The replenishment model is, as covered entities self-describe, "an accounting mechanism" by which they retroactively match discounts for the

3

pharmacy with previous (full price) dispensing events to customers. *See* Summ. J. Hr'g Tr. at 59–60 (Ron Connelly, counsel for the Louisiana Primary Care Ass'n), *AbbVie, et al. v. Murrill*, No. 6:23-CV-01307-RRS-CBW (W.D. La. June 6, 2024), ECF No. 84; 61 Fed. Reg. at 43,555. The replenishment model permits the "transfer" of 340B-priced drugs to contract pharmacies with the full knowledge that those drugs will be sold to any customer who comes in the door, whether 340B eligible or not. Dkt. 1 ¶ 63–64; *Novartis Pharms. Corp. v. Johnson,* 102 F.4th 452, 457–58 (D.C. Cir. 2024). Importantly, contract pharmacies often take title to the 340B-priced drugs themselves, and do not maintain an agency relationship with the covered entities they "service." Dkt. 1 ¶ 69. "Covered entities and commercial pharmacies reap windfalls from gaining access to manufacturers' drugs at deeply discounted prices under the federal 340B program, but uninsured and underinsured patients are not benefitting." *Id*. ¶ 74.

In 2020, drug manufacturers began adopting contract-pharmacy policies that restore the 340B Program's integrity. AbbVie's current policy continues to offer covered entities unlimited 340B-priced drugs at or below the ceiling price. *Id*. ¶¶ 82–84. But AbbVie will not provide discounted drugs to unlimited, third-party contract pharmacies that are serving hospital-type covered entities. *Id*. ¶ 84. Instead, consistent with the 1996 Guidelines, AbbVie only takes 340B orders for direct delivery to a covered entity's in-house pharmacy or one contract pharmacy located within 40 miles of the covered entity if the covered entity does not have an in-house pharmacy. *Id.* "If a hospital covered entity is unable to identify an eligible contract pharmacy within 40 miles, AbbVie will work with the covered entity to identify a suitable alternative." *Id*. ¶ 85.

Both the Third Circuit and the D.C. Circuit have broadly upheld manufacturers' contract pharmacy policies as lawful and consistent with the 340B statute, finding that manufacturers have the right to impose reasonable conditions on the offers they make under federal law. *Id.* ¶¶ 94–97;

4

*see also Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703–04 (3d Cir. 2023); *Novartis*, 102 F.4th at 460–61.

***The Tennessee Law.*** S.B. 1414 requires manufacturers to transfer 340B-priced drugs to unlimited contract pharmacies and bans manufacturers from imposing any conditions or limitations on their 340B "offers." Specifically, Section 1(a) of the law provides that manufacturers may not: **(1)** "[i]mpose additional requirements or limitations on a 340B entity, including requiring the submission of any health information, claims or utilization data, purchasing data, payment data, or other data as a condition for allowing the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity" unless otherwise required by law; **(2)** "[r]equire a 340B entity to reverse, resubmit, or clarify a claim after the initial adjudication unless these actions are in the normal course of business and not related to the 340B program"; **(3)** "[i]mpose any requirements relating to inventory management systems of 340B drugs," unless otherwise required by law; **(4)** "[i]mpose any requirement relating to the frequency, duration, or scope of audits that are not imposed on pharmacies or providers that are not 340B entities"; **(5)** "[i]mpose any requirement relating to accreditation, recertification, credentialing, or recredentialing that are not imposed on pharmacies or providers that are not 340B entities"; and **(6)** "[i]mpose any requirement determined by the attorney general and reporter to interfere with the ability of a 340B entity to access discounts provided under the 340B program." Tenn. Code Ann. § 47-18-136(a)(1)–(6).

Additionally, S.B. 1414 states that a manufacturer may not "deny, impose any restrictions or prohibitions on, discriminate against, or otherwise limit the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity or other location that is under contract with, or otherwise

authorized by, a 340B entity to receive 340B drugs on of behalf the 340B entity." Tenn. Code Ann. § 47-18-136(c).[1]

Finally, S.B. 1414 amends Tennessee law to make any violation of S.B. 1414's provisions a violation of the Tennessee Consumer Protection Act, which in turn grants the Tennessee Attorney General investigatory and enforcement authority over alleged violations. Tenn. Code Ann. § 47-18-136(a)(6) (citing *id.* § 47-18-104(b)); *id.* § 47-18-109(a)(1).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not its factual merits. At this stage, a district court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is only appropriate if the plaintiff has failed to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570; *id.* at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'").

## ARGUMENT

**I.    AbbVie Has Stated A Cause of Action That This Court Can Remedy.**

AbbVie has adequately "alleged a cause of action" to bring a pre-enforcement challenge. First, AbbVie has "an intent 'to engage in a course of conduct' arguably 'affected with a constitutional interest,'" *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024)—an "intent to continue selling drugs in Tennessee and in interstate commerce, as a

---

[1]    While AbbVie's contract-pharmacy limitation is lawful under subsection (c)'s grandfather clause, the statute still prohibits AbbVie from collecting claims data and from modifying its offer conditions in the future. The Court has previously concluded that the grandfather clause would not extend to any new or more stringent restrictions but rejected the notion that routine adjustments would disqualify the policy from protection. *See* Dkt. 45 at 19–21.

participant of the 340B program," Dkt. 45 at 16.  AbbVie has also adequately pled that its contemplated conduct is "arguably 'proscribed by a statute'" and "there is 'a credible threat' of the statute's enforcement" against AbbVie, *Christian Healthcare Ctrs.*, 117 F.4th at 843—S.B. 1414 was enacted precisely to render unlawful policies like AbbVie's.

Initially, the Attorney General says AbbVie has "not pleaded enough factual matter to raise a plausible inference that it will violate the law." Dkt. 47 at 6.  But this Court has already concluded AbbVie's "anticipated conduct is clearly proscribed by statute."  Dkt. 45 at 16.  And AbbVie's current policy is "directly at odds with [S.B. 1414], which prohibits drug manufacturers that participate in the 340B Program in Tennessee … from imposing any conditions on delivery related to the provision of claims data."  *Id.* at 17.  AbbVie's complaint, and the plain text of S.B. 1414, confirm the same.  AbbVie will only transfer 340B drugs to a contract pharmacy if, among other things, the affiliated covered entity "submits limited claims data on 340B utilization for that pharmacy location."  Dkt. 1 ¶ 84.  But S.B. 1414 prohibits AbbVie from "requiring the submission of any … claims or utilization data, … as a condition for allowing the acquisition of a 340B drug by, … a 340B entity."  Tenn. Code Ann. § 47-18-136(a)(1).  There is thus no dispute that "AbbVie currently sells and distributes drugs to multiple covered entities in Tennessee that 'purport to maintain contract pharmacy arrangements," that "AbbVie's sales to covered entities in Tennessee are currently governed by its 340B" contract-pharmacy policy, and that such policy "will no longer be legal under S.B. 1414."  Dkt. 45 at 17.  AbbVie's policy "obviously" violates S.B. 1414 and there is "remarkably little else needed to adjudicate the issues."  *Id.* at 18.

Second, the Attorney General is also incorrect that AbbVie has "failed to plead facts that would indicate how General Skrmetti will respond" to AbbVie's policy violating S.B. 1414.  Dkt. 47 at 7.  This, again, represents a position the Court has already rejected:  This Court earlier

concluded that AbbVie established a credible threat of enforcement because "AbbVie's policy of requiring claims data from covered entities that request 340B drug delivery to a contract pharmacy is clearly implicated by one or more provisions of § 1(a)." Dkt. 45 at 19. Indeed, S.B. 1414 was "evidently passed specifically for the purpose of invalidating policies like AbbVie's" and "[t]he Attorney General certainly has not disavowed an intent to enforce it." *Id.* at 18.

Third, the Attorney General accuses AbbVie of requesting "sweeping" declarations and an "injunction covering every attempt ever to enforce the Hospital Protection Act." Dkt. 47 at 8. That is an obvious exaggeration of the relief AbbVie seeks. But either way, this Court enjoys "broad discretion when fashioning injunctive relief" and "[o]nce a constitutional violation is found," the Court may "tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Thomas v. Schroer*, 2017 WL 6489144, at *9 (W.D. Tenn. Sept. 20, 2017). Concerns about the scope of AbbVie's remedy are appropriately addressed at that stage— not when assessing the legal sufficiency of AbbVie's underlying claims.

## II.     AbbVie Has Adequately Stated A Preemption Claim As To Subsection (A).

S.B. 1414's claims-data prohibitions, contained in subsection (a), squarely conflict with the federal 340B Program and enter an exclusive field that the federal statute creates.

***Conflict Preemption.*** S.B. 1414 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the 340B Program. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). By preventing AbbVie from obtaining basic claims data, S.B. 1414 hamstrings AbbVie's ability to avail itself of the federal Program's enforcement tools. *See* Tenn. Code Ann. § 47-18-136(a) (prohibiting manufacturers from, among other things, "requiring the submission of any … claims or utilization data, … as a condition for allowing the acquisition of a 340B drug by, … a 340B entity.").

To balance the significant price concessions the 340B Program demands, Congress provided specific enforcement tools to the Secretary of HHS and specific dispute mechanisms to manufacturers to bring the Secretary into action. 42 U.S.C. §§ 256b(d)(l)(B)(v), (vi), (d)(3); *see also id.* § 256b(d)(3)(A); 89 Fed. Reg. 28,643. The threshold requirement for any manufacturer to initiate the ADR process is an audit of a covered entity—including a detailed audit workplan—over which HRSA has asserted preapproval authority. *See* 61 Fed. Reg. 65,406, 65,412 (Dec. 12, 1996). While HRSA hypothetically could approve a proposed audit without data supporting the manufacturer's reasonable suspicion, as a practical matter, it is nearly impossible. *See* Dkt. 1 ¶¶ 111, 153, 155. Aside from a covered entity's or contract pharmacy's own self-reporting—of which AbbVie is aware of zero examples—claims data is the only practical way for a manufacturer to discover potential diversion or duplicate discounting. *Id.* ¶¶ 111, 156. And while AbbVie is aware that HRSA contemplates granting audits based on "[s]ignificant changes in quantities of specific drugs ordered by a covered entity," 61 Fed. Reg. 65,406, AbbVie is not aware of any audit ever being granted on that ground. Neither does it make sense in today's 340B Program, since the contract pharmacy explosion has invited all covered entities and their contract pharmacies to order significantly more drugs at the 340B price. *See* Dkt. 1 ¶¶ 56, 57, 71.

Just recently, HRSA itself signaled that manufacturers may request claims data under the 340B Program and that such data are important to compliance. *See* 90 Fed. Reg. 36,163 (Aug. 1, 2025). The agency issued a notice proposing a rebate pilot program to address concerns about the compliance burdens created by the overlap between the Inflation Reduction Act's Drug Price Negotiation Program and the 340B Program. *Id.* at 36,163. In short, the Negotiation Program purports to fix prices that certain manufacturers may charge for drugs dispensed to Medicare-covered individuals (i.e., the "maximum fair price"). *See* 42 U.S.C. §§ 1320f(a)(3), (c)(2), 1320f-

2(a)(3). And because such individuals are often dispensed drugs at covered entities, dispenses in those circumstances may qualify for both the maximum fair price and the 340B price. In that scenario, federal law places the burden on manufacturers to deliver the correct price concession (whichever is lower), but not both price concessions. *Id.* §§ 1320f-2(d)(1), (d)(2). HRSA's pilot program describes that such determinations will be made using ***claims data*** that manufacturers request and covered entities provide. 90 Fed. Reg. at 36,165. Thus, the agency both assumed that manufacturers may request claims data under the 340B Program and confirmed that such data are important to compliance measures. S.B. 1414 also directly conflicts with the pilot program, and indeed compliance with both is impossible.

The Attorney General and Amici rely on a variety of misunderstandings in denying the conflicts S.B. 1414 creates. First, while it is true that no rule in the 340B Program has ever required covered entities provide claims data to manufacturers, claims data have always been among the "standard information" that manufacturers may request as a part of routine business practice. *Novartis*, 102 F.4th at 463. Second, while manufacturers may "request" claims data, the reality— as alleged in AbbVie's complaint—is that covered entities and contract pharmacies rarely, if ever, voluntarily provide such data. Dkt. 1 ¶¶ 156–57. Third, providing claims data in no way imposes "self-auditing" obligations on covered entities or their pharmacies because providers and dispensers are already generating the data in their routine business practice. *See* 90 Fed. Reg. at 36,165. Fourth, it proves nothing to observe that the 340B statute vests the "executive branch 'with exclusive authority'" over the 340B Program's enforcement. Dkt. 47 at 13. The sole means available to manufacturers for holding HHS accountable to its statutory obligations are through the federal ADR process and, if necessary, judicial review. *See* 42 U.S.C. § 256b(a)(5)(C).

Restricting AbbVie's access to standard data that is necessary to accomplish that end impedes Congress's objectives as embodied in the statute.

Finally, it is beyond dispute that Congress intended that the Executive Branch would preside over a "centralized enforcement" scheme for the 340B Program, allowing it to "administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." *Astra*, 563 U.S. at 120. S.B. 1414 impedes that goal by bringing questions about the federal statute into a state forum. Those questions will necessarily include who qualifies as a "340B entity," *compare* Tenn. Code Ann. § 47-18-136(g)(2) *with* 42 U.S.C. § 256b(a)(4), what qualifies as a "340B drug" and how that price must be made available, *compare* Tenn. Code Ann. § 47-18-136(g)(1) *with* 42 U.S.C. § 256b(a)(1), and what constitutes an "additional requirement[] or limitation[]" to, or "interfere[nce]" with, a 340B transaction compared to requirements or limitations permissible under the 340B Program, *see* Tenn. Code Ann. § 47-18-136(a)(1), (a)(6). The Tennessee Attorney General—and presumably Tennessee courts—are now tangled in those questions that were formerly resolved between covered entities, manufacturers, and a single department of the federal government. That creates the precise "risk of conflicting adjudications" about which the *Astra* court warned and the 340B statute aims to prevent. *PhRMA v. Morrisey*, 760 F. Supp. 3d 439, 458 (S.D. W.Va. 2024).

**Field Preemption.** Where Congress's "framework of regulation" is "so pervasive" that "Congress left no room for the States to supplement it," state laws that enter that "field" of federal regulation are preempted. *Arizona v. United States*, 567 U.S. 387, 399 (2012). S.B. 1414 improperly enters an exclusive federal field by seeking to regulate (and eliminate) a liberty that the 340B statute includes: the ability of manufacturers to include claims data conditions in their 340B offers. *See* Tenn. Code Ann. § 47-18-136(a).

The text of the 340B statute requires manufacturers to "offer each covered entity covered outpatient drugs for purchase at or below the applicable ceiling price." 42 U.S.C. § 256b(a)(1). Implicit in that statutory text and structure is the right of manufacturers to include non-price terms in their "offer" of 340B drugs. *See Novartis*, 102 F.4th at 460. That is because "background contract principles establish that an 'offer'—like any ensuing contract—may contain both price and non-price terms." *Id.* In other words, the 340B statute establishes both a manufacturer's obligation to extend the ceiling price to covered entities *and* the manufacturer's right to prescribe the reasonable, non-price terms that govern its offers. *Id.* at 463.

The Attorney General observes that the statute is "silent" as to non-price terms. Dkt. 47 at 1. That is correct. But that "silence preserves—rather than abrogates—the ability" of manufacturers to include those non-price terms. *Novartis*, 102 F.4th at 460. And minimally burdensome requests for claims data are among the non-price terms that the statute permits manufacturers to include. *Id.* at 463. By purporting to take away that right, S.B. 1414 invades a federal field that Congress has conclusively established.

## III. AbbVie Has Adequately Stated A Due Process Claim.

The government violates the due process clause when it takes "life, liberty or property" under a law "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). A law "lacking explicit standards is unconstitutionally vague because it allows an unrestricted delegation of power," thus leaving "the definition of its terms to law enforcement officers" and inviting "arbitrary, discriminatory and overzealous enforcement." *Leonardson v. City of E. Lansing*, 896 F.2d 190, 198 (6th Cir. 1990).

S.B. 1414 represents a classic example of that sort of unbounded delegation. It prohibits AbbVie from "interfer[ing]" with "the ability of a 340B entity to access [340B] discounts," but

only as "determined by the attorney general." Tenn. Code Ann. § 47-18-136(a)(6). It otherwise provides no "explicit standards" and amounts to "an unrestricted delegation of power." *Leonardson*, 896 F.2d at 198. That "interference" is synonymous with "obstruct[ion]," *see* Dkt. 45 at 41-42, does not resolve the problem because what constitutes "obstruct[ion]" is just as much a mystery as what constitutes "interference." And what reasonable people may think does not matter anyways, since S.B. 1414 vests that definitional authority solely in the Attorney General. *See* Tenn. Code Ann. § 47-18-136(a)(6).

The Attorney General believes it helps that "words like 'interfere,' 'requirement,' 'relate,' and 'authorize,' are all 'commonly used.'" Dkt. 47 at 16. That ignores the even more problematic unbounded discretion the law vests in the Attorney General to "determine[]" what constitutes "interference." This Court has previously observed: "Legal specificity is also a form of legal restraint." *Tennessee Educ. Ass'n v. Reynolds*, 732 F. Supp. 3d 783, 806 (M.D. Tenn. 2024). Without such specificity, "a prohibition is simply an 'unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.'" *Id.* That is the defect that plagues S.B. 1414. And it is particularly concerning as applied to the 340B Program, which is subject to continuous disputes over the extent of manufacturers' obligations. S.B. 1414's broad and vague delegation is flatly inconsistent with the Constitution's Due Process guarantee.

## IV.  AbbVie Has Adequately Stated A First Amendment Claim.

The Attorney General downplays S.B. 1414 as a "run-of-the-mill 'business regulation,'" insisting that it doesn't restrict AbbVie's ability to "express[] its views about the 340B program." Dkt. 47 at 18-19. But the First Amendment protects far more. It safeguards AbbVie's right to engage in targeted, meaningful communication necessary to petition the government for redress, which includes access to the ADR process. The "right to petition extends to all departments of the

Government," including "administrative agencies." *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000). And it protects private citizens' right to petition the government for resolution of "business and economic interests," not just "matters of 'public concern.'" *Id.* As such, the First Amendment protects AbbVie's right to meaningfully access the federal government's established 340B dispute-resolution process. *See Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010).

S.B. 1414 violates that right by effectively barring AbbVie from accessing the federal ADR system—a "forum[] established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). Federal 340B audit regulations require "good faith" inquiry as a mandatory predicate to seeking HRSA resolution, and part of that good faith inquiry necessarily requires AbbVie to seek clarity on claims from covered entities. 61 Fed. Reg. at 65,412. Yet S.B. 1414 stands in the way. It bars manufacturers from requesting "claims or utilization data" as a condition of a 340B-eligible sale, asking a "340B entity" to "clarify a claim," or imposing "any requirement" related to "audits." Tenn. Code Ann. §§ 47-18-136(a)(1), (2), (4). S.B. 1414 thereby prevents AbbVie from accessing the federal ADR system—AbbVie's only path to resolve claims relating to abuses of the 340B Program—in violation of the First Amendment. *See Gable*, 201 F.3d at 771.

## V. If the Court Reaches Them, AbbVie Has Adequately Stated Claims Under the Takings Clause, Supremacy Clause, and Dormant Commerce Clause.

In its preliminary injunction order, the Court concluded that AbbVie lacks standing to challenge Tenn. Code Ann. § 47-18-136(c) because AbbVie's contract-pharmacy limitation is exempted from the statute's reach: The grandfather clause protects AbbVie from the application of subsection (c), and the remainder of the statute's provisions cannot be construed to prohibit the same conduct as subsection (c). *See* Dkt. 45 at 18-20 & n.7. AbbVie would thus consent to the dismissal, ***without prejudice***, of its claims that are predicated on S.B. 1414's outlawing AbbVie's

contract-pharmacy limitations. The Attorney General appears to have briefed the motion to dismiss as if there is still a live question about whether S.B. 1414 constitutionally prohibits AbbVie's contract-pharmacy limitation. AbbVie thus offers the following argument, ***in the alternative***, to the extent the Attorney General disputes the Court's holding regarding S.B. 1414 as applied to AbbVie's contract-pharmacy limitation.

***Takings.*** S.B. 1414 constitutes a taking because the new law compels AbbVie to transfer its drugs at discounted prices to private third parties. When the government appropriates personal property for a third party, a physical taking occurs. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021); *Horne v. Dep't of Agric.*, 576 U.S. 350, 361 (2015).

Both the law's text and the on-the-ground reality bear this out. Begin with the text. S.B. 1414 provides that AbbVie may not "directly or indirectly, deny, … or otherwise limit the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity." Tenn. Code Ann. § 47-18-136(c). In other words, the Tennessee legislature has directed AbbVie to transfer its personal property at a particular price to any contract pharmacy that demands it—and empowered the Attorney General to see to it that these transfers are consummated. That is precisely what will happen on the ground, too: Contract pharmacies will place orders with AbbVie for 340B-priced drugs and, because of S.B. 1414, AbbVie will have no choice but to complete those orders (even though it otherwise would not have accepted them). *See* Dkt. 1 ¶¶ 13, 14, 81, 121, 149, 170. Short of the government appropriating the property for itself rather than a third-party, that is the barest form of physical taking. *See Cedar Point Nursery*, 594 U.S. at 148; *Horne*, 576 U.S. at 361.

The Attorney General's responses are not compelling. First, he claims that there is no physical taking. Dkt. 47 at 14. That is, to put it mildly, surprising. The plain text of S.B. 1414 prohibits AbbVie from "deny[ing]" a contract pharmacy's "acquisition" of drugs at the 340B price,

Tenn. Code Ann. § 47-18-136(c).  As a result, S.B. 1414 will force AbbVie to convey more discounted drugs to contract pharmacies in Tennessee than AbbVie otherwise would.  Dkt. 1 ¶¶ 13, 121.  The pharmacies will literally, physically take possession of the drugs at that price and then sell them to their own customers.  *Id.* ¶¶ 64, 66.

Second, the Attorney General says that "[r]estricting the terms of a commercial sale is not 'the same as forcing' the sale in the first place."  Dkt. 47 at 14.  But S.B. 1414's own text, and the allegations in AbbVie's complaint, confirm that the new law will affirmatively compel sales—much more than merely regulating the terms on which those sales occur.  But for S.B. 1414, AbbVie would not complete sales to unlimited contract pharmacies.  Dkt. 1 ¶¶ 13, 14, 81, 121, 149, 170.  It will now be forced to do so.  To the extent the Attorney General disagrees with that contention, it misunderstands the workings of the 340B Program—and that can only be clarified after proper discovery.

Finally, the Attorney General alludes to the voluntary participation doctrine.  *See* Dkt. 47 at 14.  Even if AbbVie's participation in the federal program is voluntary, that says nothing about the voluntariness of S.B. 1414.  Through its pharmaceutical pricing agreement, AbbVie agrees to "offer" the 340B price to the covered entities enumerated in the 340B statute.  42 U.S.C. § 256b(a)(1), (a)(4).  It is beyond dispute that transferring 340B-priced drugs to unlimited contract pharmacies is not a part of the federal Program's obligations.  *Novartis*, 102 F.4th at 460-61.  It is S.B. 1414 that imposes that obligation on AbbVie.  *See* Tenn. Code Ann. § 47-18-136(c).  And there is no mechanism through which AbbVie can avoid S.B. 1414's requirements.[2]

---

[2]   The Attorney General is also incorrect that a regulatory takings analysis flat-out cannot be applied to personal property.  *Wilkins v. Daniels*, 913 F. Supp. 2d 517, 543 (S.D. Ohio 2012), *aff'd*, 744 F.3d 409 (6th Cir. 2014).

16

*Field Preemption.* The federal 340B Program, at the least with respect to its prescriptions regarding pricing and eligibility, comprises a field that States may not enter. The federal statute outlines manufacturers basic obligation to offer the 340B price to covered entities. *See* 42 U.S.C. § 256b(a)(1) (requiring manufacturers to "offer each covered entity covered outpatient drugs for purchase at or below the applicable ceiling price"). It then announces the price to be charged, *see id.* § 256b(a)(2), and the types of healthcare providers that may insist upon that price, *see id.* § 256b(a)(4). Even on its narrowest interpretation, the 340B Program speaks at least to the field of 340B pricing (the price to be paid) and eligibility (the entities that may insist upon an "offer" of that pricing).

S.B. 1414 invades that field: The law says AbbVie may not "deny" the "acquisition of a 340B drug" by a contract pharmacy. Tenn. Code Ann. § 47-18-136(c). The text of the law, on its face, amounts to a plain command for AbbVie to transfer its drugs to a contract pharmacy—and without any conditions or limitations that AbbVie would otherwise insist upon. In other words, when a contract pharmacy places an order for 340B-priced drugs, AbbVie will have no choice but to accept the order and transfer the drugs to the pharmacy at that price. Dkt. 1 ¶¶ 13, 47, 170. The only involvement of the covered entity is that it is the entity's purchasing account through which the order is made, and the entity later shares in the revenues generated. *Id.* ¶¶ 59, 66. Since it is undisputed that contract pharmacies are not covered entities, *see* 42 U.S.C. § 256b(a)(4), it is difficult to imagine a plainer example of a state law expanding eligibility under the 340B Program, *AstraZeneca*, 543 F. Supp. 3d at 60.

The Attorney General's argument thus fails whether or not he is correct that S.B. 1414 amounts to a simple "delivery" law. Dkt. 47 at 12. If S.B. 1414 effectively regulates price and eligibility—i.e., requiring delivery *at a particular price to particular entities*—it invades the 340B

17

Case 3:25-cv-00519    Document 52    Filed 08/07/25    Page 22 of 27 PageID #: 2082

statute's exclusive authority over those fields. *See* 42 U.S.C. §§ 256b(a)(1), (a)(4). If S.B. 1414 somehow regulates only drug "delivery," then it still invades the 340B statute's field by obstructing manufacturers' affirmative liberty to include terms—like claims data or otherwise—in their 340B offers. *See supra* § I.

The Attorney General sidesteps this reality by arguing that "nothing in the text of 340B prevents delivery of a drug to any pharmacy that accepts and disperses the drug to a 340B patient 'on behalf of' a 340B hospital." Dkt. 47 at 12. Sure, but a key factual dispute in this case is whether Tennessee contract pharmacies do act "on behalf of" covered entities or whether, as AbbVie alleges, those pharmacies do not function as agents of the entities and instead take title to the drugs for themselves and dispense them at-will to their customers. Dkt. 1 ¶¶ 59, 68, 69. The immediate problem is thus not that S.B. 1414 compels "diversion," Dkt. 47 at 12—although it very likely does so—but that S.B. 1414 compels the transfer of 340B-priced drugs to pharmacies that are not as a legal or practical matter acting "on behalf of" Tennessee covered entities. If that is true—as AbbVie alleges—then S.B. 1414 ***does*** expand the entities eligible to insist on 340B pricing. And that would constitute a flagrant invasion into the federal statute's exclusive field.

The Attorney General also errs when he suggests this case concerns the "broader field of pharmaceutical regulation" which "state law dominates while federal law merely complements." *Id.* at 10. This case does not concern so broad a field because S.B. 1414 itself addresses only transactions under the federal 340B Program. *See* Tenn. Code Ann. § 47-18-136. It does not regulate the pharmacy or healthcare industries writ large. Rather, it addresses only the types of entities that may insist upon 340B pricing and the terms of those specific transactions. That is why the Attorney General is also mistaken when he intimates that S.B. 1414 is reserved to a "subject[]" that States have traditionally regulated." Dkt. 47 at 9. Tennessee has not historically regulated

the 340B Program—a relatively recent invention of the federal government that is "inherently federal" in "character." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-48 (2001). That is also why it is impossible that S.B. 1414 is among the "background principles of state contract law," Dkt. 47 at 9, against which Congress legislated in creating the 340B Program. No law like S.B. 1414 existed when Congress created the 340B Program.

*Dormant Commerce Clause.* AbbVie has adequately stated a dormant commerce clause claim because S.B. 1414 favors in-state covered entities and commercial pharmacies while significantly burdening out-of-state manufactures. *Id.*; Dkt. 1 ¶ 197. Still, the Attorney General claims that a state law is not discriminatory within the meaning of the dormant Commerce Clause unless it "seeks to advantage in-state firms or disadvantage out-of-state *rivals*." Dkt. 47 at 17. But the Attorney General cites "no case law that specifies that a dormant Commerce Clause analysis must be predicated on comparing the same industry and reviewing the effects simply from an in-state or out-of-state vantage point." *Novartis Pharms. Corp. v. Bailey*, 2025 WL 489881, at *5 (W.D. Mo. Feb. 13, 2025). And the dormant Commerce Clause prohibits "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023). Thus, even when the parties are not direct competitors, a statute—like S.B. 1414—that effectively advantages in-state economic actors at the expense of out-of-state actors triggers the application of the dormant Commerce Clause doctrine. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 268 (1984).

More importantly, AbbVie has satisfied its burden at this stage to allege facts that plausibly support a violation of the dormant Commerce Clause doctrine. *See Iqbal*, 556 U.S. at 678. AbbVie alleges that S.B. 1414 advantages in-state interests: "The central aim of Tennessee's law is to

19

privilege covered entities and pharmacies over out-of-state manufacturers by forcing the manufacturers to provide drugs at significantly reduced prices to covered entities under terms not agreeable to them." *See* Dkt. 1 ¶ 196. These burdens fall squarely on out-of-state manufacturers and confer direct benefits on in-state covered entities and pharmacies. That is enough to plausibly plead discrimination. *See Bailey*, 2025 WL 489881, at *5.

In addition to its discriminatory effect, S.B. 1414 also impermissibly regulates commerce beyond Tennessee's borders. The Commerce Clause reserves to Congress the power to "regulate Commerce … among the several States." U.S. Const. art. I, § 8, cl. 3. States may not "control[] commerce occurring wholly outside [their] boundaries." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989). S.B. 1414 crosses that line because it imposes sweeping requirements on manufacturers, including a ban on restricting transfer of 340B-priced drugs to any pharmacy or "other location" authorized by a covered entity, regardless of whether that pharmacy or location has any nexus to Tennessee. Tenn. Code Ann. § 47-18-136(c). And Tennessee courts do not presume statutes have an intrastate limitation unless the statute itself includes such language. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 522 (Tenn. 2005). S.B. 1414 contains no such limitation.

## CONCLUSION

For the foregoing reasons, the court should deny Defendant's Motion to Dismiss.

Dated: August 7, 2025                          Respectfully submitted,

                                               /s/ *Minton Mayer*
                                               Minton P. Mayer, TN BPR# 018111
                                               Jorie Zajicek, TN BPR# 039615
                                               Quintairos, Prieto, Wood & Boyer, P.A.
                                               565 Marriott Drive, Suite 620
                                               Nashville, TN 37214
                                               Tel: (901)-312-1640
                                               Email: minton.mayer@qpwblaw.com
                                                        jorie.zajicek@qpwblaw.com


                                               Matthew S. Owen, P.C. (admitted *pro hac vice*)
                                               Meredith M. Pohl (admitted *pro hac vice*)
                                               KIRKLAND & ELLIS LLP
                                               1301 Pennsylvania Avenue N.W.
                                               Washington, D.C. 20004
                                               Telephone: (202) 389-5000
                                               Email: matt.owen@kirkland.com
                                                        meredith.pohl@kirkland.com

                                               *Counsel for Plaintiffs.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system on August 7, 2025, which electronically served a copy to all counsel of record:

**Jorie Edith Zajicek**
**Matthew S. Owen**
**Meredith M. Pohl**
**Minton P. Mayer**
*Counsel for Plaintiffs*


**Jessica S. Berk**
**Gabriel Krimm**
*Counsel for the Attorney General*


*/s/ Minton Mayer*
Minton P. Mayer, TN BPR# 018111
